DAVIS *v*. STATE OF INDIANA

[No. 27,507. Filed May 19, 1941.]

*Ira M. Holmes,* of Indianapolis, for appellant.

*George M. Beamer,* Attorney General, and *Walter O. Lewis,* Deputy Attorney General, for the State.

FANSLER, J.—The appellant was convicted of perjury. Error is assigned upon the overruling of a motion to quash the affidavit and upon the overruling of a motion for a new trial.

It appears that the appellant and Carrie Davis and another were charged in the City Court of Shelbyville with the offenses of vagrancy, desecration of the flag of the United States, rout, and intimidation of police officers. On the trial, Carrie Davis claimed the right to be discharged upon the ground that she was the wife of the codefendant, Erman Davis, and that it must be presumed that she was acting under coercion of her husband. There was evidence that the Davises were living together as husband and wife in Indianapolis, and it appears that Erman Davis, in addition to testifying to these facts, testified that he and Carrie Davis procured a marriage license, and were married, in April, 1935, by a Justice of the Peace, in Steubenville, Ohio.

Thereafter Erman Davis was charged by affidavit with perjury, and this appeal is from a judgment of conviction in that case.

The perjury charge is based upon appellant's testimony in the misdemeanor trial. The affidavit charges that the question as to whether or not Carrie Davis was the wife of Erman Davis became a material issue in the trial. It is further alleged that the testimony of Erman Davis, that they procured a marriage license and were married in April, 1935, in Steubenville, Ohio, is false. But it is not alleged that his testimony, as to having procured a license and having been married in Steubenville, Ohio, was material to the issue on trial at the time he testified, nor is it alleged that Erman and Carrie Davis were not in fact husband and wife, nor that his testimony that they were husband and wife was false.

The evidence adduced at the perjury trial included testimony of jurors and others that Erman Davis had testified in the misdemeanor trial that he and Carrie

Davis were husband and wife, and were living together as husband and wife in Indianapolis, and testimony that, on the day the misdemeanors were charged to have been committed, or the day before, they had said they were husband and wife and were living together as husband and wife. Two witnesses, one a county clerk and one an abstracter of titles, from Shelbyville, Indiana, testified that they went to Steubenville, Ohio, and searched the records in the courthouse and found no record of a marriage license having been issued as claimed by the appellant, and found no Justice of the Peace in the section of Steubenville where Davis testified that they had been married by a Justice of the Peace.

Falsely testifying is not perjury unless it is "touching a matter material to the point in question. . . ." § 10-3801, Burns' 1933, § 2619, Baldwin's 1934. This was the rule at common law. There may be cases in which a mere statement of the testimony said to be false shows that it was material to the issue in the case in which it was given. But where the facts sworn to involve a collateral matter not appearing on its face to be material, materiality must be alleged and proven. In such cases courts and text-writers have experienced difficulty in formulating a rule by which materiality may be determined. It is clear that there must be criminal intent, although such an intention may be inferred from the giving of willfully false testimony reasonably calculated to mislead the trior of facts upon a material question. In Gillett on Criminal Law, 2d Ed., § 694, p. 553, it is said that: ". . . if a witness, with an intention to deceive the jury, swear so as to make an impression on their minds that a fact material in the cause is different from what it really is and from what he knows it to be, he is guilty of perjury." But

where the material question in a case is the value of property destroyed, it may not be possible to show that the value put upon it by a witness, who had testified falsely as to his qualifications as an expert on values, was not the true value, but in such a case he may be convicted of perjury because of an unlawful intention to improperly influence the jury.

Gillett says (§ 692): "Thus, if a witness be asked whether goods were paid for on a particular day, and he answer in the affirmative,—if the goods were really paid for, though not on that particular day, it will not be perjury." But it seems clear that if there is a conflict in the testimony, as to whether in fact the goods were paid for, he might be guilty of perjury if the testimony was false and designedly so. Serjeant Hawkins refers to a number of similar cases in which it was held that the false testimony was not material, but he suggests that if there was conflict upon the question of whether the goods were really paid for, the particularity of the witness' testimony as to the date upon which they were paid for would have a tendency to cause his testimony upon the material question to be given greater weight. At the conclusion of his discussion, he says: "But I cannot find this matter anywhere thoroughly settled or debated, and therefore shall leave it to every man's own judgment, which from the consideration of the circumstances of each particular case, may generally without any great difficulty discern whether the matter in which perjury is assigned, were wholly impertinent, idle, and insignificant, or not, which seems to be the best rule for determining whether it be punishable as perjury or not." 1 Hawk. P. C., 6th Ed., ch. 69, § 8, p. 324. See Bishop on Criminal Law, 5th Ed., Vol. 2, § 1034, p. 566.

The conclusion that the materiality of testimony upon a subject immaterial in itself must be determined from the facts and circumstances of each case, finds ■ support in the evident difficulty of formulating a rule of general application.

Since one is presumed to be innocent of crime until the contrary is alleged and proven, it seems that, where testimony upon a matter in itself collateral is ■■ assigned as perjury, the state is charged with the burden of alleging that the particular facts falsely sworn to were material, and of proving sufficient of the surrounding circumstances to show their materiality.

In *State* v. *Sutton* (1897), 147 Ind. 158, 161, 163, 46 N. E. 468, 469, it is said:

"An indictment or affidavit and information for perjury must, of course, contain either the general allegation that the testimony claimed to have been false was given in relation to 'a matter material to the point in question,' or else the particular facts showing such materiality must be stated. Either will be sufficient, but one or the other is necessary. . . .

"While it is true that we may readily apprehend, from the face of the indictment, in the case at bar, that, in the action for damages, the liability of the company and the value of the colt were the chief issues before the court, yet we may also perceive that the ability of the appellee to testify as an expert, as well as his credibility as a witness, must likewise have been material to the correct decision of that case. As to his ability as an expert, he testified 'that he had been in' the business of attending to and raising horses for fifteen years.' It is not denied that this statement was correct, and its materiality is apparent. The materiality of the statement as to whether 'he had worked

three years at a livery stable kept and owned by one Pritchard in Covington,' does not, however, seem so evident. His expert knowledge might have been acquired elsewhere. It may be admitted, therefore, that the indictment, in this respect, would be insufficient, were it not for the general allegation that the matter concerning which this testimony was given was material."

From the affidavit before us, it appears that the material question in the case in which the testimony was given was whether the Davises were in fact husband and wife. The time and place of their marriage was not material. The affidavit alleges that the question of whether or not they were married was material, but there is neither general allegation that the testimony claimed to be false related to a matter material to the point in question, nor are particular facts alleged showing the materiality of the testimony which is charged to be false. The fact that the parties were husband and wife may not have been disputed in the original trial; they may have been married elsewhere. There appears to have been evidence in the misdemeanor trial sufficient to establish a common-law marriage.

It was error to overrule the motion to quash.

In closing argument the prosecuting attorney said: "This fellow is a fifth columnist," and: "The defendant is one of those who call the American flag a dirty rag." There was an objection to these statements, and a motion to withdraw the submission. The court overruled the motion, but instructed the jury that the remarks of the prosecuting attorney were improper and that they should disregard them. Ordinarily it is assumed that the jury will obey such an admonition by the court, and that the defendant's

right to a fair trial is not prejudiced unless the remarks are so grossly damaging that it can be concluded that their evil effects were not cured by the court's admonition. The remarks of the prosecuting attorney here in question were entirely outside the record, and seem to have been made for the purpose of inflaming the minds of the jurors against the defendant, a stranger in the community. At the time of the trial (November, 1940) there was much agitation and discussion concerning subversive activities and suspicion of sabotage by persons charged or suspected of being Communists. There was evidence of excitement over these matters among patriotic citizens. Under such circumstances grave doubts arise as to whether a fair trial has been given a stranger charged by the legal representatives of the state with being a Communist who disrespects the flag. Prosecuting officers, sworn to support the Constitution, and patriotic citizens, should be the first to insist upon protection of the constitutional right to a fair trial, and they should carefully avoid improprieties tending to prejudice that right, lest they be charged with sabotage of constitutional rights. Since the case must be reversed upon another ground, it may be assumed that the court's admonition protected the defendant from prejudice.

Judgment reversed, with instructions to sustain the defendant's motion to quash.

NOTE.—Reported in 34 N. E. (2d) 23.